# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA R. MICHAEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 2:16-cv-00473 |
| v. | ) | |
| | ) | Judge Mark R. Hornak |
| QUAKER VALLEY SCHOOL DISTRICT | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **OPINION**

**Mark R. Hornak, United States District Judge**

This civil right lawsuit stems from the termination of Plaintiff Linda A. Michael ("Michael" or "Plaintiff") from her position as a full-time paraprofessional with Defendant Quaker Valley School District ("Quaker Valley" or "the District"). (ECF No. 1). In addition to suing Quaker Valley, Michael also brought this action against Dr. Barbara Mellett ("Dr. Mellett") in her individual capacity and official capacity as Principal of Osborne Elementary, against Dr. Heidi Ondek in her individual capacity and official capacity as Assistant Superintendent of Quaker Valley, and against her union, the Quaker Valley Education Support Personnel Association, Unit 1 ("the Union").[1]

Prior to any Defendant filing an answer or other Rule 12 response, on June 14, 2016, Michael filed her First Amended Complaint. (ECF No. 8). Defendants responded by filing motions to dismiss. (ECF Nos. 9 and 11). By Order dated July 12, 2016, Plaintiff was given leave to further amend on or before July 18, 2016. (ECF No. 14). Plaintiff then filed her Second Amended Complaint ("SAC") on July 18, 2016. (ECF No. 16). The Union responded with a

---

[1] In the circumstances present in this case, claims against these public officials in their official capacities are tantamount to claims against the District itself, and will be treated that way by the Court.

motion to dismiss, (ECF No. 20), and the other Defendants (collectively "Quaker Valley Defendants" or "Defendants") jointly filed a motion to strike (ECF No. 17) on July 28, 2016, and a motion to dismiss (ECF No. 22) on August 8, 2016. Plaintiff's responses to the motions to dismiss were held in abeyance by Order dated August 11, 2016 until such time as the Court ruled on the motion to strike. (ECF No. 25). On August 19, 2016, the Court denied the motion to strike as premature, (ECF No. 34), and ordered that Plaintiff respond to the motions to dismiss by September 9, 2016. Plaintiff responded to Quaker Valley Defendants' motion to dismiss on September 9, 2016, (ECF No. 39), and filed a notice of dismissal with prejudice as to the Union on September 16, 2016 (ECF No. 41), which the Court approved. (ECF No. 42). That brings us to the present state of affairs.

After all of that, the only matter now before the Court is the Quaker Valley Defendants' Motion to Dismiss the SAC, filed pursuant to Federal Rule of Civil Procedure 12(b)(6) alleging a failure to state a claim. (ECF No. 22). For the reasons stated in this Opinion, the Court will grant in part and deny in part that Motion to Dismiss.

## I. LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations in the sac as true and view them in the light most favorable to the plaintiff. To survive a Rule 12(b)(6) motion, her SAC must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 663. In short, the motion to dismiss should be granted if she does not allege facts which could, if

2

established at trial, entitle her to relief. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

In general, when considering a motion to dismiss under Rule 12(b)(6), a court may not consider matters outside the complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Consideration of such matters ordinarily will convert such a motion to a motion for summary judgment as provided in Federal Rule of Civil Procedure 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."), except that, as instructed by our Court of Appeals, a document integral to or explicitly relied upon in the complaint may be considered without converting a Rule 12(b)(6) motion into a summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3rd Cir.1993)). The key, then, when a defendant interposes documents not attached to the complaint is to determine whether the documents actually are "integral to" or "relied upon by plaintiff to make out" her claims or whether the documents really are just part of the defense to the claims presented.

## II. **FACTUAL BACKGROUND**

For purposes of the present Motion, as pled by Michael in her SAC, the essential facts are as follows:

Michael was employed by Quaker Valley as a paraprofessional from August 2010 until her termination effective April 27, 2015. (ECF No. 16, at ¶ 11). During the events involved in this dispute, Dr. Mellett was the Principal of Osborne Elementary, which is an elementary school in the District. (ECF No. 16, at ¶ 6). During that time as well, Dr. Ondek was the Assistant Superintendent of the Quaker Valley School District. (ECF No. 16, at ¶ 7).

3

Michael worked at various locations within the District, (ECF. No. 16, at ¶ 11), and from 2012 to 2015 she worked at Osborne Elementary. (ECF No. 16, at ¶ 12). As part of her duties, Michael was assigned to work with a special needs child while in the classroom with a teacher, (ECF No. 16, at ¶ 13), and would provide individual assistance with the child's academic-based questions, assist with the functioning of the classroom, and escort students between appointments within the school and to the school's administrative offices. (ECF No. 16, at ¶ 13).

In November of 2011, Michael was elected as a Council member in Leetsdale Borough, which is a municipality within the District. (ECF No. 16, at ¶¶ 15, 16). Quaker Valley's School Board held a meeting in the Fall of 2013 at which members of the community questioned Quaker Valley's purchase and potential taking of residential properties for use as a parking lot and/or drop-off zone for Quaker Valley High School. (ECF No. 16, at ¶¶ 16, 17). Michael attended the meeting, she says both in her official capacity as a Leetsdale Borough Council member and as an individual resident of the District. (ECF No. 16, at ¶¶ 18, 23). At a Fall 2013 School Board meeting, Michael says that she raised issues as to the necessity of the expansion, the insufficient investigation undertaken regarding same, and the loss of tax base that would result from a purchase and taking (ECF No. 16, at ¶ 19), and her husband addressed these issues as well, apparently in agreement with Michael. (ECF No. 16, at ¶ 20). The debate on the expansion was reportedly intense. (ECF No. 16, at ¶ 21). Michael did not return to another public School Board meeting afterwards. She says that it was because she expressed positions contrary to that of the School Board; she felt intimidated by certain conduct and statements, which she does not specify, by at least one School Board member; and she feared retribution for then having expressed positions contrary to those of the School Board. (ECF No. 16, at ¶ 22).

4

On or about March 27, 2014, an incident occurred with a student while Michael was working at the Osborne Elementary School. (ECF No. 16, at ¶ 24). During state-mandated testing, Michael observed the student, who was not her "primary assigned student," (ECF No. 16, at ¶ 33), make an obscene sexual gesture when Michael was three feet away from the student, and although there was a teacher present in the classroom, the teacher did not witness the gesture. (ECF No. 16, at ¶¶ 25, 26). Michael was shocked by the elementary school child's gesture and in response told the student to "quit acting like a jerk," but then immediately apologized to the student and relayed the incident to the teacher. (ECF No. 16, at ¶¶ 27, 28). Michael discussed the incident with Dr. Mellett, who indicated that the student had previous "behavioral incidents" and that she would explain the situation to the student's parents, who were "well known" to the Defendants. (ECF No. 16, at ¶ 30). Michael further alleges that other than this incident, she is not aware of any negative interactions she ever had with students in her charge and that at the time this incident occurred she had never been "written-up" or reported for any misconduct. (ECF No. 16, at ¶¶ 30, 31).

On or about April 4, 2014, Michael met with Dr. Mellett, Director of Student Services Dr. Hoover, and Union President Cheryl Savage to discuss the March 27, 2014 incident. (ECF No. 16, at ¶ 32). By letter to Michael dated April 8, 2014, Dr. Mellett summarized the meeting to have included concerns about Michael following plans as well as Michael's interaction with her "primary assigned student" and outlined Dr. Mellett's intention to develop an improvement plan for Michael with a specific timeline. (ECF No. 16, at ¶ 33). Both Michael and the Union representative did not recall any discussion regarding the letter's referenced "treating and redirecting" of Michael's "primary assigned student," and accordingly, Michael responded on April 9, 2014 with a letter to Dr. Mellett stating that the April 4, 2014 meeting had not included

any discussion of that topic. (ECF No. 16, at ¶ 34).[2] On April 9, 2014, Michael also mailed to Dr. Mellett a signed request for Michael to review her personnel file as is provided for in the collective bargaining agreement ("CBA") between the District and the Union, and she included with the request hand-written notes suggesting ways to improve communication and teamwork and responding to Dr. Mellett's proposed improvement plan. (ECF No. 16, at ¶¶ 35, 56). Dr. Mellet did not provide Michael with any follow-up on the improvement plan or on Michael's suggestions. (ECF No. 16, at ¶37). Despite Michael's written request, Michael was never provided with her records or access to her personnel file. (ECF No. 16, at ¶¶ 36, 56).

Then, on or about April 22, 2014, Michael was called to the District's office and was informed that she was suspended with pay pending investigation of an unspecified "new issue." (ECF No. 16, at ¶ 38). Dr. Ondek detailed the suspension in a letter to Michael. (ECF No. 16, at ¶ 38). Then, on or about April 28, 2014, a disciplinary hearing was held with Michael, the Union president, a Union secretary, Michael's Union representative, Quaker Valley's attorney, Dr. Mellet, and Dr. Ondek all present. (ECF No. 16, at ¶ 39). The previously discussed March 27, 2014 incident was not the subject of the April 28, 2014 disciplinary hearing. (ECF No. 16, at ¶ 40). Rather, at the April 28, 2014 disciplinary hearing, Quaker Valley's attorney orally accused Michael of grabbing the wrist of the same student involved in the March 27, 2014 incident when Michael was escorting that student to the counselor's office as directed by a classroom teacher in February, 2014. (ECF No. 16, at ¶ 40). Michael and her Union requested documentation regarding the alleged February 2014 incident, but no documentation was provided to her before, during or after the April 28, 2014 hearing, nor was the basis for the allegations of the February 2014 incident ever disclosed to her. (ECF No. 16, at ¶¶ 42, 57, 58). Michael did indicate at the

---

[2] Defendants assert in their brief that the April 4, 2014 meeting included discussion regarding Michael's primary assigned student, (ECF No. 23 at 12), however, this is contrary to the allegations in the SAC, which are what the Court must consider in deciding the motion to dismiss.

6

April 28, 2014 disciplinary hearing that she had escorted the student and two other students to the counselor's office but denied that she touched any of the students. (ECF No. 16, at ¶ 41).

Michael remained on suspension after the hearing and then received notice by letter on or about November 4, 2014 from Dr. Ondek that her employment status had been changed retroactive to October 8, 2014 to "suspended without pay." (ECF No. 16, at ¶¶ 44, 45, 46). According to Michael, this letter included disparaging remarks about her character and failed to state in writing the reason for the suspension, contrary to the requirements of the CBA. (ECF No. 16, at ¶ 40). The November 4, 2014 letter further indicated that Michael would be provided with a statement of charges and a notice of right to a hearing before the School Board, but Quaker Valley never provided to her any statement of charges or any notice of right to a hearing before the Board. (ECF No. 16, at ¶ 46).

On November 25, 2014, after Michael had already been suspended without pay for a month and a half, Union Representative Ms. Liz Hendra notified Michael that a grievance had been filed on her behalf. (ECF No. 16, at ¶¶ 39, 47). Michael requested but never received a copy of the filed grievance. (ECF No. 16, at ¶ 48). She likewise never received from Defendants or her Union a listing of any procedures, deadlines, or guidance regarding the grievance process other than the brief summary in the CBA itself. (ECF No. 16, at ¶¶ 48, 60). She was never provided any Grievance Report Form, which requires signatures and guidance through the steps of the grievance process as provided in the CBA. (ECF No. 16, at ¶ 48).

By letter dated April 20, 2015, Dr. Ondek told the following to Michael: that a final disciplinary action had been determined; that the suspension without pay, which she had already been in place for over six months, would be continued through April 24, 2015; and that effective April 27, 2015, Michael was restored not to full employment but only on a part-time basis, and

7

then not to her position as a paraprofessional but instead to the demoted position of part-time cafeteria cashier, (ECF Nos. 16, at ¶¶ 50-52; 23-3), which reduced her hours and her rate of pay. (ECF No. 16, at ¶ 52). Thus, Michael was suspended with pay for almost six months and suspended without pay for more than six additional months. Effective April 27, 2015, Quaker Valley terminated Michael from her full-time paraprofessional employment, and because she did not accept the demotion, terminated her from all employment with the District effective that same date. (ECF No. 16, at ¶¶ 2, 52).

Although Michael participated in the April 4, 2014 meeting discussing the March 2014 incident and participated in the April 28, 2014 meeting accusing her of the February 2014 incident, she says that neither the District nor the Union identified to her the formal grievance structure and they did not follow the grievance procedure. (ECF No. 16, at ¶ 60). The Union also did not notify her of deadlines or opportunities to appeal and meet with School District authorities after employment decisions were made by the Quaker Valley Defendants, (ECF No. 16, at ¶ 61), and also "discouraged" her from enforcing her rights under the CBA. (ECF No. 16, at ¶¶ 49, 62).

The Quaker Valley Defendants cite to three Exhibits, A, B, and C, attached to their Brief in Support of their Motion to Dismiss. (ECF Nos. 23-1, 23-2, 23-3). Their Exhibit A, they assert, "is a notice letter providing Plaintiff with advance notice of the April 22, 2014 disciplinary hearing. This document is not relied upon or referenced by *Plaintiff* in her Amended Complaint." (ECF No. 23 at 7) (emphasis added). Given Circuit law as to consideration of such papers at this stage of the proceeding, this ends the Court's inquiry as to Exhibit A, and it will not be considered relative to the pending motion to dismiss.[3]

---

[3] The Quaker Valley Defendants say that they cite and provide Exhibit A to help the Court out lest it be mislead by Michael to infer that she had no "notice of the April 22, 2014 disciplinary hearing." Still, such is a matter outside

8

Exhibits B and C, say the Quaker Valley Defendants, "are documents explicitly referenced, relied upon and/or integral to Plaintiff's claims." (ECF No. 23 at 7) (citing the SAC at ¶¶ 45-46 regarding Exhibit B and ¶¶ 50-51 regarding Exhibit C). According to the standard as set out in *Pension Benefit Guar. Corp.*, the Court needs to consider whether these Exhibits are relied upon for or integral to Michael's claims, and therefore can be considered here.

As to Exhibit B, which is a November 4, 2014 letter from Dr. Ondek to Michael, the Court concludes that this document is explicitly relied upon by Michael in the SAC regarding: 1) the notice of her suspension without pay; 2) the failure of the letter to provide the reasons for the suspension; and 3) the statement that the District would provide her with a "statement of charges" and "notice of a right to a hearing before the board of school directors." (ECF No. 16 at ¶ 45, 46). Further, Michael does not dispute that Exhibit B is indeed the November 4, 2014 letter she relies on. Exhibit B is relied on in and integral to Michael's claims as alleged and appropriately may be considered without converting the motion from a motion to dismiss to one for summary judgment.

The Quaker Valley Defendants also rely on Exhibit B to assert that the November 4, 2014 letter communicated that Michael's suspension without pay was based upon her misconduct. (ECF No. 23 at 5).[4] The Court observes that the precise misconduct for which Michael was suspended without pay is not specified in the letter, consistent with what is alleged by Michael, nor is the term "misconduct" even used. (ECF No. 23-2). Indeed, the letter appears to

the pleadings, and moreover, Michael does not claim she was not notified of the April 22, 2014 meeting, though she does contend that it was not a hearing and just served to notify her of her suspension. (ECF Nos. 15, at ¶ 38, 40 at 9).

[4] Defendants also assert that the letter indicates that further investigation occurred following the April 22, 2014 meeting, however, such is not indicated in the letter, nor supported by it, although Defendants' assertion that there were further "negotiations" between the parties does find support in it. (ECF Nos. 23 at 5; 23-2). The SAC supports a conclusion only that an investigation of sorts occurred at least in the form of accusation against Michael at the April 28, 2014 disciplinary hearing and her denial at that time. (ECF No. 16, at ¶¶ 40, 41).

9

communicate a suspension without pay pending discharge and that Michael would not be able to return to work as a paraprofessional, stating further that: "Your history has demonstrated that you are not suited for that role, by demeanor and disposition." (ECF No. 23-2). The letter indicates vaguely that "the district viewed the last precipitating event with great alarm," (ECF No. 23-2), not identifying to which event the District referred—the March 2014 event, which would be the last occurring in time, or the February 2014 event, which would be the last event raised to Michael, or possibly some other event. The letter rather than clarifying matters, as Defendants apparently had hoped, appears more to muddy the water as to what the reasons were for Michael's change in employment status and tends to support Michael's allegations of lack of meaningful and adequate notice and confusion created by Defendants. Additionally, the letter does provide, as alleged by Michael, that in "due course" the District would be forthcoming with a statement of charges and notice of right to a hearing before the School Board. (ECF No. 23-2).

As to Exhibit C, which is the April 20, 2015 letter from Dr. Ondek, Michael relies on it in alleging that Dr. Ondek communicated to her that her suspension without pay continued through April 24, 2015, that she would no longer be employed as a paraprofessional or have full-time employment, (ECF No. 16 at ¶¶ 50-51), but rather "[e]ffective April 27, 2015, Plaintiff [would be] restored from suspension without pay, but demoted and reassigned to the position of part-time cashier in the cafeteria." (ECF. No. 16 at ¶ 51). Exhibit C, as is the case with Exhibit B, is relied on by Michael and integral to her claims, and thus, consideration of it will not convert the motion to dismiss. The Quaker Valley Defendants point to the April 20, 2015 letter advising Michael "of her right to follow the grievance procedure set forth in the collective bargaining agreement if she wished to object to her demotion." (ECF Nos. 23 at 5, 23-3). Specifically, the letter states: "You have the right to continue with the pending grievance with respect to your

suspension without pay, and may include this demotion within that grievance, as you and the Association may determine. We will follow up with your union representative to resolve those technical concerns." (ECF No. 23-3). The letter also provides that as a result of Quaker Valley's determination, Michael was rendered partially unemployed. (ECF No. 23-3).

## III. DISCUSSION

Section 1983 is the statutory means to vindicate the alleged violation of federal rights conferred in federal law, but is not itself a source of substantive constitutional rights. *Graham v. Connor*, 490 U.S. 386, 393-394 (1989). Michael's SAC identifies two sources of the rights she contends were violated—the guarantee of free speech in the First Amendment to the United States Constitution and the guarantee of due process in the Fourteenth Amendment.

### A. First Amendment Retaliation

In Count I, Michael sues the Quaker Valley Defendants pursuant to § 1983 for violation of her rights secured by the First Amendment, contending that the alleged February 2014 incident is merely a pretext for retaliation for her having exercised her free speech rights at a Fall 2013 school board meeting in opposing and questioning Quaker Valley's plans regarding purchasing and taking properties. (ECF No. 16, at ¶ 43). Specifically, she contends that the February 2014 incident was a fabrication, (ECF No. 16, at ¶¶ 23, 72), that the February and March 2014 incidents were minor and one was self-reported, (ECF No. 15, at ¶ 23), that there is a relationship between the student who she allegedly grabbed by the wrist and "decision-makers" within the District, (ECF No. 16, at ¶ 73), that the actions of the Quaker Valley Defendants were under color of law, (ECF No. 16, at ¶ 74), and that the actions or omissions by Defendants Mellett and Ondek were at the direction of Quaker Valley decision-makers in retaliation for Michael having exercised her free speech rights. (ECF No. 16, at ¶ 75).

11

In order for Michael, as a public employee, to succeed in establishing a First Amendment

claim for retaliation in her suspension, termination, and/or demotion, she:

> "must show that [her] speech is protected by the First Amendment and that the
> speech was a substantial or motivating factor in what is alleged to be the
> employer's retaliatory action." *Flora v. Cnty. of Luzerne,* 776 F.3d 169, 174 (3d
> Cir. 2015) (citing *Gorum v. Sessoms,* 561 F.3d 179, 184 (3d Cir. 2009)). The
> causation element may be pled by setting out: "(1) an unusually suggestive
> temporal proximity between the protected activity and the allegedly retaliatory
> action, or (2) a pattern of antagonism coupled with timing to establish a causal
> link, or ... evidence gleaned from the record as a whole [from which] the trier of
> the fact should infer causation." *Lauren W. ex rel. Jean W. v. DeFlaminis,* 480
> F.3d 259, 267 (3d Cir. 2007) (internal quotation marks and citations omitted).
> Plaintiffs must also plausibly plead that retaliatory acts are not *de minimis* but are
> significant enough that they would "deter a person of ordinary firmness from
> exercising his First Amendment rights." *McKee v. Hart,* 436 F.3d 165, 170 (3d
> Cir. 2006)[.]

*Fouse v. Beaver Cty.,* No. 2:14-CV-00810, 2015 WL 1967242, at *8 (W.D. Pa. May 1, 2015).

The Quaker Valley Defendants argue that the First Amendment retaliation claim fails

because it does not allege a sufficient causal nexus between speech and adverse action and

further fails as to Defendants Mellet and Ondek as providing no basis to plausibly conclude that

they had knowledge of Michael's protected speech. (ECF No. 23, at 8-9).

### 1. **Causal Nexus**

Focusing first on the causal nexus issue, the Quaker Valley Defendants assert that other

than alleging in conclusory fashion that Michael's First Amendment speech was the cause of the

discipline, Michael provides nothing that plausibly could show a link between her speech and her

suspension and demotion. (ECF No. 23 at 10). As stated in *Fouse,* a causal connection can be

shown: 1) by an unusually suggestive temporal proximity; 2) a pattern of antagonism coupled

with timing; or 3) evidence gleaned from the record as a whole from which a reasonable jury

could infer causation.[5] *Fouse*, 2015 WL 1967242, at *8 (citing *Lauren W. ex rel. Jean W.,* 480 F.3d at 267). Michael alleges that she engaged in First Amendment protected speech in the Fall of 2013 and that on or about April 4, 2014 she was called to a meeting to discuss her conduct towards a student.

Other than to indicate she engaged in protected speech in the Fall of 2013, Michael does not provide a specific date of her speech.[6] Therefore, the speech as alleged and the April 4, 2014 meeting, which signaled the beginning of the end for Michael, occurred at the very least nearly four months apart and maybe as much as seven months apart. The Quaker Valley Defendants offer that the "adverse action" really was not taken until seventeen months afterwards on April 2015, (ECF No. 23 at 9), which was when she was demoted to part-time cashier and terminated for not accepting the demotion. But it is not that simple. The SAC provides that Quaker Valley had communicated to her on April 22, 2014 that she was suspended with pay, and then on or about November 4, 2014, that she was suspended without pay effective retroactively to October 8, 2014. A suspension without pay could deter a person of ordinary firmness from exercising

---

[5] *Cavicchia v. Philadelphia Hous. Auth.,* No. CIV.A. 03-0116, 2003 WL 22595210, at *9 (E.D. Pa. Nov. 7, 2003), *aff'd,* 137 F. App'x 495 (3d Cir. 2005), observes:

> Pretext analysis used in Title VII cases is also useful in deciding First Amendment retaliation claims. *See Feldman v. Phila. Hous. Auth.,* 43 F.3d 823, 831 (3d Cir. 1994) (discussing pretext in determining causation in First Amendment retaliation claim); *see also Azzaro v. County of Allegheny,* 110 F.3d 968, 981 (3d Cir. 1997) (holding that Title VII causation standards are relevant in evaluating causation under First Amendment); *Zappan v. Pa. Bd. of Prob. & Parole,* No. Civ.A. 00–1409, 2002 WL 32174230, at *11 (E.D. Pa. Nov. 25, 2002) (discussing same); *Rodriguez v. Torres,* 60 F.Supp.2d 334, 340 n. 2 (D. N.J.1990); *Fogarty v. Boles,* 938 F. Supp. 292, 299 n. 4 (E.D. Pa. 1996) (same).

[6] Defendants vehemently contend that Michael has misstated the date of this speech, and that it really occurred in 2012. (ECF No. 23 at 2 n.1; 9 n.3). The Plaintiff disputed that in her response. (ECF No. 40). As the Court indicated in ruling on the Motion to Strike (ECF No. 17), that factual dispute cannot be resolved at this stage. (ECF No. 34, August 19, 2016 Text Order). What the Court can say with confidence is that if she proceeds further with this case, Michael had better be able to show that her speech occurred in late 2013, and not a year earlier.

their free speech rights, and a suspension with pay also might suffice.[7] *See Barry v. Luzerne County*, 447 F.Supp.2d 438, 450 (M.D. Pa. 2006) (a requirement is that the challenged conduct be more than *de minimis* and "a reasonable jury could conclude that a suspension with pay could deter a reasonable person from exercising his or her First Amendment rights."); *Robert Cowan v. Board of Educ. of Borough of Carteret*, Civ. Act. No. 06-5459, 2010 WL 624883, at * 9 (D. N.J. Feb. 22, 2010) (suspension with pay accompanied by threat of future discipline such as withholding salary and increases sufficient). Considering the pleading record before the Court, the initial suspension occurred at least four months after the speech and the suspension without pay occurred ten months after.

As observed by our Court of Appeals in *Bailey v. Commerce Nat. Ins. Services, Inc.*, 267 F. App'x 167, 170 (3d Cir. 2008), an elapsed time period of four months between the protected activity and the challenged retaliatory act is not unusually suggestive of retaliatory motive. 267 F. App'x at 170 (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Indeed, even "a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation." *LeBoon v. Lancaster Jewish Community Center* Ass'n, 503 F.3d 217, 233 (3d Cir. 2007). Here, the timing is not "unusually suggestive" considering

---

[7] Defendants use the term "adverse action" in their argument, as does some of the case law, but the Court is mindful that the level of "adverse action" ordinarily required to state a claim for Title VII discrimination, which prohibits discrimination in hiring, firing and "compensation, terms, conditions, or privileges of employment" 42 U.S.C. § 2000e-2(a0(1), *see Jones v. Southeaster Pa. Transp. Authority*, 796 F.3d 323, 325-326 (3d Cir. 2015) (expressly declining to decide whether suspension with pay will support a claim of retaliation and determining that suspension with pay does not come within the prohibition of § 2000e-2(a)(1), and is not "a serious and tangible" alteration of same), is not the threshold requirement for either a Title VII retaliation claim, requiring some "material adverse" action, *Prise v. Alderwoods Group, Inc.*, Civ. A. No. 06-1470, 2011 WL 3047629, at *6 (W.D. Pa. July 25, 2011) (observing as well that whether conduct is material adverse is a question of fact), or a First Amendment retaliation claim—requiring that she show only that the action would deter a person of ordinary firmness from exercising their free speech rights. *McKee*, 436 F.3d at 170; *See also Alers v. City of Phila.*, 919 F. Supp. 2d 528, 554 (E.D. Pa. 2013) (noting the different standard for adverse employment actions when it comes to retaliation claims). Title VII standards for retaliation do provide guidance as those standards are very similar. *Holt v. Pennsylvania*, No. CV 10-5510, 2015 WL 4944032, at *36, n.61 (E.D. Pa. Aug. 19, 2015).

14

that the suspension without pay occurred ten to twelve months after the asserted protected speech and the demotion occurred some approximately seventeen months after the protected speech. Even focusing on the initial suspension with pay—some four or five months after the speech— the timing alone does not resolve the issue, since,

[i]t is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides [one] evidentiary basis from which an inference can be drawn. The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific. When there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation.

*Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 178 (3d Cir. 1997) (Title VII retaliation).

The Quaker Valley Defendants argue that Michael does not allege "any pattern of antagonism which began after her protected speech except to the extent that the disciplinary actions, which did not commence until five months later, can be considered a pattern of antagonism." (ECF No. 23 at 9). The fact of the disciplinary meetings and hearings, though they culminated in retaliatory action, would not tend to show an alleged "pattern of antagonism" to support causation between her speech and her challenged discipline—as such would be a mere bootstrapping as to causation. *See Boyd v. Citizens Bank of Pennsylvania, Inc.*, Civ. Act. No. 2:12-cv-0032, 2014 WL 2154902, at \*28 (W.D. Pa. May 22, 2014) ("[T]he occurrence of disciplinary action following protected activity does not establish a pattern of antagonism."). The Court agrees that the SAC does not sufficiently allege facts plausibly to show a pattern of antagonism to support causation.

Finally, Defendants assert in sum that the SAC "fails to allege any other facts from which the Court could plausibly infer causation." (ECF No. 23 at 10). Where temporal proximity is insufficient, and allegations as to protected activity followed by a period of antagonism likewise

15

fails, causal connection may be shown when the allegations "looked at as a whole, may suffice to raise the inference." *Kachmar*, 109 F.3d at 176.

In *Kachmar*, for example, the court found the plaintiff's claim, which involved opposition to discrimination, sufficient where she asserted that prior to her termination and following her protected activity, which in that case involved opposition to discrimination, her supervisor had commented in her review that "she was not on the management track" because of her "feminist campaigning," and also subsequent to additional protected activity she had been told by management to look for another job.

A plaintiff, such as Michael,

> may use "evidence gleaned from the record as a whole" to show an inference of causation. *DeFlaminis*, 480 F.3d at 267. Such inference can be made when an employer gives inconsistent reasons for termination, *Waddell v. Small Tube Products, Inc.*, 799 F.2d 69, 73 (3d Cir. 1986), engages in a series of seemingly benign actions that essentially paved the way for an employee's termination, *Woodson v. Scott Paper Co.*, 109 F.3d 913, 921 (3d Cir. 1997), or attempts to provoke the employee by continually disciplining him for minor matters and miscalculating the amount of time he worked, *Robinson v. SEPTA*, 982 F.2d 892, 895 (3d Cir. 1993).

*Bifano v. Borough*, No. CV 3:16-0245, 2016 WL 7404610, at *10 (M.D. Pa. Dec. 22, 2016).

As instructed by *Waddell*, a false justification for the retaliatory action also will support causation. *Waddell*, 799 F.2d at 73; *Bifano*, 2016 WL 7404610, at *10. Likewise, in *Godfrey v. Upland Borough*, --- F. Supp. 3d ---, 2016 WL 5298844, at *2 (E.D. Pa. Sept. 13, 2016), the court determined that the plaintiffs had stated a claim for First Amendment retaliation for statements made at a public meeting where the defendant subsequently forced the plaintiffs to defend against a meritless citation. Our Court of Appeals has cautioned that in viewing the record to determine whether causation can be gleaned from it as a whole, there are "no limits set on what [the Court has] been willing to consider," *Farrell v. Planters Lifesavers Co.*, 206 F.3d

271, 281 (3d Cir. 2000), and the court should use a "wider lens" and consider a broad array of circumstances to show causation. 206 F.3d at 281, 284.

Michael alleges what appears to be a series of what could be found to be "bait and switch" meetings or quasi-hearings that also included allegedly manufactured charges, false reports as to the subject of various meetings, as well as false promises and irregularities in the disciplinary process. At this stage of the litigation and viewing the allegations as a whole "with a wider lens" as instructed by our Court of Appeals, and then in a light favorable to Michael, the Court gleans from the SAC averments that meet Michael's light burden at this stage of the case to plausibly show a causal connection between that the protected activity and the alleged retaliatory action. Therefore, the Quaker Valley Defendants' Motion to Dismiss Count I for First Amendment Retaliation will be denied.

### 2. Failure to Allege the Requisite Knowledge by Defendants Ondek and Mellett

The Quaker Valley Defendants move to dismiss the retaliation claim against Defendants Mellett and Ondek on the basis that the SAC fails to aver their knowledge of the asserted protected speech. (ECF No. 23 at 8, 10). Michael makes no averments in the SAC that they had any knowledge of the protected speech, which is required to show retaliatory motive. *Jones v. School District of Philadelphia*, 198 F.3d 403, 415 (3d Cir. 1999) (affirming summary judgment where action taken by principals was without knowledge of protected activity).

Michael argues that she sets out "sufficiently plausible allegations as to the individual defendants['] knowledge of [her] protected speech prior to any disciplinary measures being taken[,] . . . [and also] has alleged a plausible explanation to account for the individual defendants having knowledge of the protected speech." (ECF No. 40 at 7). Michael posits further that, although "Plaintiff has not alleged that the individual defendants were at the school

17

board meeting where the protected speech occurred, the complaint does connect one defendant, Dr. Mellett, to the central figure in the meeting in which Plaintiff felt intimidated for expressing views contrary to the school board," (ECF No. 40 at 7) (emphasis added) (citing Second Amended Complaint at ¶¶ 17-22, 29-30), and also alleges that thereafter Drs. Mellett and Ondek acted in concert. (ECF No. 40 at 7).

First, as to Dr. Mellett the "connection" claimed by Michael is wholly unexplained and the facts regarding it are unalleged, as are the circumstances at the School Board meeting that supposedly caused Michael to feel intimated. Second, even an averment as to "some" connection between Dr. Mellett and the "central figure" at the meeting is not the same as an averment in her pleading of the requisite knowledge of Dr. Mellett of the protected speech or facts plausibly to support that averment. Third, as to Dr. Ondek, Michael does not allege any connection, vague or otherwise, even as to the "central figure." Fourth, her allegation that Drs. Mellett and Ondek then acted in concert is nothing more than a conclusory allegation. Michael's use of the term "plausible" in her argument is more that her allegations ultimately would not be inconsistent with a finding of knowledge—which is not the same as actually making these allegations or a sufficient showing in her pleading.

Michael distinguishes the cases of *Gorum v. Sessoms*, 561 F.3d 179, 188 (3d Cir. 2009), and *Ambrose v. Township of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002), relied on by the Quaker Valley Defendants, because the individual defendants in those cases affirmatively disavowed the requisite knowledge through their testimony, and the plaintiff otherwise failed to offer evidence to contradict the disavowed knowledge. (ECF No. 40 at 7). Michael does argue that the Quaker Valley Defendants at times seek to compare this case, which is at the pleading stage, with cases addressing mature evidentiary records, and that their argument would hold

18

Michael to a standard higher than that which applies to a motion to dismiss for failure to state a claim. (ECF No. 40 at 6). Despite Michael's broad contention that cases involving summary judgment have no application here, the cases obviously are instructive as to the nature of allegations that will suffice to state a First Amendment retaliation claim, when keeping in mind the lighter motion to dismiss standard with which the Court is familiar.

Based on the foregoing, the Court concludes that the SAC does not assert a plausible claim for First Amendment retaliation against Defendants Mellett and Ondek. Michael does not aver facts to show the knowledge of Mellett and Ondek regarding her protected speech. It is no more than an implicit assertion in her brief that they "must have known." That is legally insufficient for personal liability to attach and Count I against them will be dismissed. The SAC is Michael's third principal pleading in this case. She had her original Complaint, and two amendatory "do overs" to make a case against Drs. Mellett and Ondek, and hasn't. She has had plenty of opportunity to put some flesh on what are already very sparse pleading bones, and has not. The First Amendment claims as to Drs. Mellett and Ondek are therefore dismissed with prejudice. *Cureton v. NCAA*, 252 F.3d 267, 272 (3d Cir. 2001) (leave to amend properly denied in light of undue delay where there were multiple prior amended pleadings); *see Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (same).

**B. Due Process**

The Quaker Valley Defendants argue that Michael fails to state a claim in Count II for violation of either substantive due process or procedural due process. (ECF No. 23 at 1).

**1. Substantive Due Process**

Michael's original Complaint (ECF No. 1, at ¶¶ 70-76), and her First Amended Complaint, (ECF No. 8, at ¶¶ 70-76), plainly attempted to state a claim for violation of

19

substantive due process and her SAC appears to retain certain "factual remnants" of her earlier allegations, (ECF No. 16 at 82), yet no longer specifically mentions an alleged substantive due process violation. In that vein, Michael confirms that her "Second Amended Complaint does not allege violations of [her] substantive due process rights." (ECF No. 40 at 2). Accordingly, the Motion to Dismiss the substantive due process claim will be denied as moot, and those claims are deemed withdrawn.

## 2. **Procedural Due Process**

Turning to the claims for violation of procedural due process under Count II, "[a]s the Third Circuit has explained, [t]o prevail on a procedural due process claim, a litigant must show (1) that the state deprived him of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due process of law." *Corr v. Borough*, --- F. Supp. 3d ---, 2016 WL 6901327, at *2 (W.D. Pa. Nov. 22, 2016) (internal quotations and citations omitted). "The essential requirements of due process . . . are notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Furthermore, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Posey v. Swissvale Borough*, No. 2:12-CV-955, 2013 WL 989953, at *15 (W.D. Pa. Mar. 13, 2013) (citing *Mathews v. Eldridge,* 424 U.S. 319, 332, (1976)).

Due process is a flexible concept and the deprivation of property entitles Plaintiff to such process and procedural protections as the situation demands. *Eldridge*, 424 U.S. at 335. "Our focus, then, rests upon the question of due process. 'We must bear in mind that no single model of procedural fairness, let alone a particular form of procedure, is dictated by the Due Process Clause.'" *Dykes v. Se. Pennsylvania Transp. Auth.*, 68 F.3d 1564, 1571 (3d Cir. 1995) (quoting *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 483, (1982)).

20

Michael's suspension without pay would constitute the requisite deprivation for due process purposes, *Skrutski v. Marut*, 288 F. App'x 803, 808 (3d Cir. 2008), as could her termination from her full-time employment as a paraprofessional.[8] Indeed, *Schmidt v. Creedon*, 639 F.3d 587, 597 (3d Cir. 2011), recognized that "absent extraordinary circumstances, due process requires notice and a hearing prior to suspension without pay, even where union grievance procedures, after the fact, fully compensate erroneously suspended employees."

Defendants make several arguments in support of their contention that Michael has not stated a claim for denial of either pre-deprivation or post-deprivation due process, citing to the various meetings and/or hearings alleged in the Second Amended Complaint, as well as state law and the grievance process provided as part of the CBA. (ECF No. 23 at 11).

### a. Pre-Deprivation Process

"Our Court of Appeals has held that, where a plaintiff has a property interest in employment, due process generally requires a pre-deprivation hearing." *Gilson v. Pennsylvania State Police*, 175 F. Supp. 3d 528, 544 (W.D. Pa. 2016) (citing *Schmidt*, 639 F.3d at 595–97), *aff'd*, --- F. App'x ---, 2017 WL 280717 (3d Cir. 2017). There is no *per se* requirement for any elaborate pre-deprivation hearing. *Loudermill*, 470 U.S. at 545; *Schmidt*, 639 F.3d at 596-97.

> Where adequate post-deprivation procedures are available, an employee is entitled only to [pre-deprivation] notice of the charges against him, *an explanation of the employer's evidence*, and an opportunity to present his side of the story. The hearing can be informal and need not definitively resolve the propriety of the

---

[8] Defendants assert as a factual matter that "Ms. Michael voluntarily abandoned her employment by failing to show up for work at her new position." (ECF No. 23 at 5). Notably, they make no argument in their Motion and brief regarding this point. As Michael explains it, a "part-time cashier position in the cafeteria is not equal to the position of paraprofessional (in pay or hours)." (ECF No. 16 at 10). Moreover, according to the April 20, 2015 letter the Defendants provided, regardless of whether she accepted the demotion, the District's decision caused her to be unemployed, albeit partially. (ECF No. 23-3). For present purposes, she has alleged facts to support that she was entitled to post-deprivation process, addressed *infra. Cf. Lebofsky v. City of Philadelphia*, 394 F. App'x 935 (3d Cir. 1010) (in the employment context generally, a demotion or reduction in pay or benefits can be indicative of a constructive discharge).

deprivation. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. An employee is generally not entitled to notice of the reasons for his discharge in advance of a pre-deprivation hearing, or to present his case to an impartial decision-maker at such a hearing.

*Schmidt,* 639 F.3d at 596–97 (internal quotations and citations omitted)(emphasis added).

Violation of the requirement to provide an adequate pre-deprivation hearing is a claim separate from that based on a denial of required post-deprivation process. Ordinarily, with no constitutionally adequate pre-deprivation hearing, "a complete constitutional violation has (allegedly) already occurred; if the Constitution requires pre-termination procedures, the most thorough and fair post-termination hearing cannot undo the failure to provide such procedures." *Alvin*, 227 F.3d at 120.

Michael specifically challenges the notice to her as untimely, having not been giving to her in advance of the April 28, 2014 disciplinary hearing, and as inadequate, as the only notice given at the April 28, 2014 hearing was oral, it did not include any information as to the evidence against her, it did not include access to the evidence or to her personnel file, and though subsequently promised, it did not include a statement of charges with reasons for the employment action. Determining adequacy of notices requires considering both its content and timing. *Gniotek v. City of Philadelphia*, 808 F.2d 241, 244 (3d Cir. 1986). "Notice is sufficient, 1) if it apprises the vulnerable party of the nature of the charges and general evidence against him, and 2) if it is timely under the particular circumstances of the case." *Gniotek*, 808 F.2d at 244.

Defendants argue that Michael was afforded "multiple hearings" in the form of various meetings discussing the charges, but Michael responds that these meetings or hearings involved differing discussions such that there were no "multiple hearings" on the same subject. Michael

22

also argues that the way in which Defendants proceeded created confusion for her as to the root issue regarding her alleged performance deficiencies or improper conduct, thus rendering any claimed notice and opportunity to be heard ineffective. (ECF No. 40 at 9). For example, she asserts that the first "meeting" on April 4, 2014 was about the March 2014 student interaction. The April 22, 2014 meeting was to be about performance issues, but instead served simply to notify Michael she was suspended without pay pending investigation of an unidentified "new issue." Then, a disciplinary hearing was held on April 28, 2014. However, she alleges that "to this day, Plaintiff does not know what is in her personnel file, nor does she know the basis of the February 2014 incident." (ECF No. 16, at ¶ 58).

> Perfect or comprehensive notice is not constitutionally required:

> As our Court of Appeals has observed, due process does not require an employer to provide every piece of evidence relevant to an employee's termination. . . . [P]retermination notice of the charges and evidence against an employee need not be in great detail as long as it allows the employee the opportunity to determine what facts, if any, within his knowledge might be presented in mitigation of or in denial of the charges. In other words, [n]otice is sufficient if is apprises the employee of the nature of the charges and general evidence against her.

*Kinavey v. D'Allesandro*, No. Civ. Act. No. 10-364, 2010 WL 3896491, at \*4 (W.D. Pa. Sept. 29, 2010) (internal citations and quotations omitted) (citing *Ashton v. Whitman*, 94 F. App'x 896, 900-901 (3d Cir. 2004)).

In *Gilson*, the plaintiff police officer received both a pre-termination notice of misconduct and a pre-termination informal hearing, but contended that his rights were violated because he was not notified in advance of all of the charges against him being considered as one of the charges was for false statements he made during the investigation. Plaintiff also was given notice orally and in writing that the investigation *required* truthful and complete responses or he may be subject to administrative action. This Court concluded that the pre-disciplinary process, in light of the post-disciplinary process available, was constitutionally adequate, having given

plaintiff pre-disciplinary notice of the misconduct as part of a summary report, a copy of the investigatory file, which included the witnesses' identity and account of the misconduct, and having given the plaintiff several days to review the material and an opportunity to respond. 175 F. Supp. 3d at 545. The Court of Appeals affirmed that this met the requirements for pre-disciplinary due process. --- F. App'x ---, 2017 WL 280717, at * 4.

Similarly, in *Gniotek*, the plaintiffs were police officers who had been terminated from employment for taking bribes after an individual testified under oath in federal court police corruption trials that he had paid the plaintiffs for protection of his illegal activities. 808 F.2d at 244. Our Court of Appeals determined that the notice adequately apprised plaintiffs of the nature of the charges and evidence where during investigatory interviews the plaintiffs were given a summary of the evidence against them, which included notice of the charges, the nature of the evidence, and identifying that the witness had testified in federal court regarding the matter. 808 F.2d at 244. The notice in *Giniotek* was considered timely though it occurred during the investigatory interviews which substituted as a pre-termination hearing, and thus, was not provided to the plaintiffs in advance. The court observed that "[l]ack of advance notice, however, does not constitute a *per se* violation of due process," 808 F.2d at 24, and depends on the competing interests involved. Ultimately, the court held advance notice was not required as:

> [t]he balance was struck by allowing the government to dismiss the employee after only a compressed hearing and by guaranteeing to the employee "an opportunity to present his side of the story" followed by a prompt and complete post-termination hearing. In the circumstances of this case, advance notice was not necessary to enable the employee to present his story and would have burdened the government's interest in quickly suspending an unsatisfactory employee.

*Gniotek v. City of Philadelphia*, 808 F.2d 241, 244–45 (3d Cir. 1986).

Under *Loudermill*, *Gniotek* and *Gilson*, Michael's assertion that she was entitled to "advanced" and "written" notice regarding the February 2014 incident prior to the April 28, 2014

hearing is inaccurate because oral notice at the time of hearing can suffice. Actual provision of all the evidence likewise is not required to comport with due process in a pre-deprivation hearing, *Ashton*, 94 F. App'x 896 (3d Cir. 1987), *McDaniels*, 59 F.3d 446 (3d Cir. 1995), but failure to provide at least general information about the evidence will support a claim for violation of a right to pre-deprivation due process. *Fraternal Order of Police Lodge No. 5 v. Tucker*, 868 F.2d 74, 75 (3d Cir. 1989); *see Loudermill*, 470 U.S. at 545.

Michael adequately alleges that she never was afforded notice of the evidence, whether elaborate or basic, regarding the February 2014 incident. Viewing the allegations in the light most favorable to her, she plausibly alleges a violation of her right to pre-termination proceedings that include notice of the charges with an explanation of the evidence, *Loudermill*, 470 U.S. 546, and with a right to be heard in response[9] such that she is entitled to discovery on her claim under Count II for denial of pre-disciplinary process.

### b. Post-Deprivation Due Process (State Law and CBA Grievance Procedure)

Next up are Michael's allegations regarding the post-deprivation process afforded Michael. Defendants argue that Michael "is afforded post-deprivation due process through statute by the School Code and the Local Agency Law," citing 24 Pa Stat. § 5-514, 2 Pa. Cons. Stat. §§ 553, 752, 754, (ECF No. 23 at 14), and through the CBA's grievance procedure. (ECF No. 23 at 16). The Court must therefore consider "whether the procedures available provided the plaintiff with due process of law." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

---

[9] The Court rejects Defendants' argument that because Michael denied the allegations made in the April 28, 2014 meeting, this somehow means she was afforded adequate notice and opportunity to respond to the charges. (ECF No. 23 at 11). Anyone could deny false allegations against them with or without notice of the evidence supporting the charges as they would know those charges to be false, yet the United States Supreme Court's opinion in *Loudermill* makes plain that due process entitles her to adequate notice regarding the evidence in order to make effective use of that opportunity to be heard.

Michael contends that the disciplinary process engaged in was: informal, despite requirements for a formal process; unfocused; inadequate and incomplete because Defendants assured her they would afford her certain procedural rights but did not, (ECF No. 40 at 3), and they did not follow the grievance process outlined in the CBA, including that defendants did not complete the required written paperwork, (ECF No. 40 at 8);[10] and rendered improperly confusing by Defendants' conduct in failing to follow procedures and follow-up on their assurance of notice and opportunity to respond, thus denying her of her rights. (ECF No. 40 at 3, 9, 12).

### 3. **School Code and Local Agency Law**

Our Court of Appeals explained in *Alvin*, in considering a claim of denial of due process based on post-deprivation process, that:

> the due process violation "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.

*Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). Nevertheless, the Court clarified in *Alvin*, "[w]e do not hold that a party need wait forever before suing, but only that, *if the process is moving forward*, and the avenues of internal appeal have not been triggered, then a suit claiming inadequacy of procedural protection is premature." *Alvin*, 227 F.3d at 120, n.4 (emphasis added). In *Alvin*, the plaintiff's admitted failure to follow through with available process was chargeable to the plaintiff and not the defendant. 227 F.3d at 120.

Defendants assert that the state statutory law provides all the post-deprivation process that is due to Michael. (ECF No. 23 at 14-16). True enough, as far as what is on the books.

---

[10] These allegations are some pretty strong evidence that Michael is well aware of the content of the CBA's grievance and arbitration provisions.

*Willard v. Pennsylvania Soc. for the Prevention of Cruelty to Animals*, 525 F. App'x 217, 221 (3d Cir. 2013) (citing *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 597 (3d Cir. 1995), abrogated on other grounds as recognized by *United Artists Theatre Circuit, Inc. v. Township of Warrington, PA*, 316 F.3d 392 (3d Cir. 2003); *Gilson*, 175 F. Supp. 3d at 548-549 (collecting cases). Relying on the existence of the School Code hearing procedures, and the Local Agency Law, Defendants argue that Michael cannot state a claim for violation of procedural due process by the School District because she has yet to avail herself of the process set up by statute, as she has not requested a School Board hearing, there has been no hearing pursuant to the School Code, no adjudication pursuant to the School Code, and no judicial review of an adjudication pursuant to the School Code. (ECF No. 23 at 15-16).

The School Code, section 5-514, 24 Pa. Stat. provides:

> The board of school directors in any school district, except as herein otherwise provided, shall after due notice, giving the reasons therefor, and after hearing if demanded, have the right at any time to remove any of its officers, employes, or appointees for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct.

24 Pa. Stat. § 5-514 (emphasis added). Similarly, the Local Agency Law provides:

> No adjudication of a local agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard.

2 Pa. Cons. Stat. Ann. § 553 (emphasis added). Section 752 provides for appeal of the local agency decision as follows:

> Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).

2 Pa. Cons. Stat. Ann. § 752. Section 754, 2 Pa. Cons. Stat. Ann., provides for the process on appeal. Under both the School Code and Local Agency Law, Michael was entitled to "due" and

27

"reasonable" notice, and the right to request a hearing before the Board, which though promised never was provided by Defendants.

Michael's SAC alleges that neither the November 4, 2014 letter from District nor the April 20, 2015 letter ever specified to her the actual misconduct resulting in the deprivation; the November 4, 2014 letter promised her that she would be provided a statement of charges and right to request a hearing before the School Board to commence formal proceedings in "due course" and that to date has not occurred; and that she was never provided information on the evidence in support of the allegations against her, yet she suffered suspension for over a year, six months of which was without pay.

Michael further responds to Defendants' arguments regarding post-deprivation process that the action and inaction of Defendants in effect "left Plaintiff without any post-deprivation due process available to her." (ECF No. 40 at 13). She distinguishes *Alvin*, where the plaintiff refused to avail herself of available procedural protections, from her case where she says that Defendants were not following the process and the process was not moving forward due to the fault of Defendants. She contends that the process in essence did not move forward because although Defendants informed her that she would be provided with a statement of charges and notice of right to a hearing before the School Board, the statement of charges and notice never came and the other necessary procedures were not followed. According to Michael's allegations, all of the statutory post-deprivation procedures cited to by Defendants "bogged down" with the still unfulfilled November 4, 2014 indication from Dr. Ondek that a statement of charges and notice of right to a hearing before the School Board would be provided in "due course."

*Gilbert v. Homar*, 520 U.S. 924 (1997) recognized that in determining what process is due, account is to be taken of the length and finality of the deprivation, such that a temporary

28

loss of income as with a suspension without pay followed by *sufficiently prompt* post-deprivation hearing can render the loss of income "relatively insubstantial (compared with termination) and fringe benefits such as health and life insurance are often not affected at all." 520 U.S. at 932. Here, it is alleged that the post-deprivation hearing was not prompt, much less sufficiently prompt, as it had not occurred at all because the November 4, 2014 promised statement of charges and notice of right to request the hearing before the School Board have never been provided, and Michael was suspended without pay for numerous months. Although Michael cannot avoid process available to her and come straight to federal court, neither can Defendants foreclose that route by simply never moving that process forward.

Whatever post-deprivation notice and opportunity to be heard in "due course" means, it does not mean what Michael alleges has actually occurred—it is now 2017 and the assurances that she was given beginning in November of 2014 when she was first deprived of her pay has never come to fruition, or so she says. According to Michael, the promised notice and opportunity simply has not been forthcoming. "At some point, a delay in the post-termination hearing would become a constitutional violation." *Loudermill*, 470 U.S. at 547. Where a particular process is inadequate, effectively blocked, or a sham, that process also would not provide the due process required by law. *Alvin*, 227 F.3d at 116, 118. Therefore, as to the provisions in the School Code and Local Agency law relied on by Defendants, at this stage in the litigation and under the facts alleged by Michael, the existence of these procedures, in a vacuum, does not bar Michael's post-deprivation due process claim.

### 4. **Grievance Procedure in the CBA**

Regarding post-deprivation procedures, Michael has one more obstacle to overcome in order to state a claim. Just as with state law processes, the grievance process under a CBA can

provide all the process that is due Michael. *Dykes,* 68 F.3d at 1571 ("A public employer may meet its obligation to provide due process through grievance procedures established in a collective bargaining agreement, provided, of course, those procedures satisfy due process.")(quoting *Armstrong v. Meyers*, 964 F.2d 948, 950 (9th Cir. 1992)); *Gilson*, 175 F. Supp. 3d at 548-549 (collecting cases).

The Quaker Valley Defendants argue that Michael's claim fails because she does not allege that she availed herself of, and completed, the grievance process. (ECF No. 23 at 5, 15-16) (citing (ECF No. 23-3)). Citing *Garzella v. Borough of Dunmore*, 280 F. App'x 169, 173 (3d Cir. 2008), they contend that Michael must pursue contractual grievance procedures, unless the grievance process is blocked or there is evidence that it is a sham. *Alvin v. Suzuki*, 227 F.3d 107, 116, 118 (3d Cir. 2000). "Where a due process claim is raised against a public employer, and grievance and arbitration procedures are in place, we have held that those procedures satisfy due process requirements 'even if the hearing conducted by the Employer ... [was] inherently biased.'" *Dykes*, 68 F.3d at 1571(citing *Jackson v. Temple University,* 721 F.2d 931 (3d Cir.1983)).

Our Court of Appeals in *Dykes* specified that "where an adequate grievance/arbitration procedure is in place and is followed, a plaintiff has received the due process to which he is entitled under the Fourteenth Amendment." 68 F.32d at 1565. After utilizing the procedures, "[i]f a public employee believes that the grievance process was defective, he may seek relief available under state law." *Dykes,* 68 F.3d at 1571. Michael, having alleged in her SAC the existence of a grievance process in the CBA, is also required to allege facts plausibly demonstrating that these post-deprivation procedures were not meaningful or adequate. *Hill v. Borough of Kutztown,* 455 F.3d 225, 234 (3d Cir. 2006) (plaintiff must allege that available

30

procedures did not provide due process); *Vurimindi v. City of Philadelphia*, 521 F. App'x 62, 65 (3d Cir. 2013); *Fullman v. Kistler*, 617 F. App'x 124, 127 (3d Cir. 2015) (affirming dismissal of claim where plaintiff failed to allege facts to show post-deprivation remedies were not meaningful).

In *Dykes*, the court considered the terms of the involved CBA, which was attached by the defendant to the motion to dismiss and which directly addressed the matter involved—failure to submit to drug and alcohol testing. In determining the plaintiff's claim, the court observed that:

> [t]he complaint establishes that Dykes had available to him a three step grievance process which could have been followed by arbitration. The grievance process was exhausted and, when the union determined not to carry the matter to arbitration, Dykes did not pursue a state court action alleging breach of the duty of fair representation.

*Dykes*, 68 F.3d at 1571. It necessarily followed that Dykes failed to state a claim.

The plaintiff's due process claim also failed in *Corr*:

> because he chose to drop the grievance process that was available to him. Although Plaintiff filed a grievance against Springdale Borough on May 19, 2014, he admits that he did not follow through with it once he resigned. ECF No. 44–2 at 87:2–87:17. In the Third Circuit, "[a] state cannot be held to have violated due process when a plaintiff has refused to utilize procedural protections that were available." *Garzella v. Borough of Dunmore*, 280 Fed.Appx. 169, 173 (3d Cir. 2008) (citing *Alvin v. Suzuki*, 227 F.3d 107 (3d Cir. 2000)). Thus, Plaintiff's due process claim fails as a matter of law because he failed to "take[ ] advantage of the processes that were available. *Id.*

2016 WL 6901327, at *3.

As with her pre-deprivation process claim, Michael alleges generally that the post-deprivation process likewise did not afford her any notice as to the evidence against her and the failure of Defendants to follow the procedure and the manner in which they proceeded caused her confusion such that the process was inadequate or ineffective. According to the SAC, the grievance process under the CBA provides five steps, one informal and four formal:

a. Informal Conference, prior to invoking formal grievance steps.
b. Step 1 of the formal grievance process includes the grievant (Plaintiff) presenting the written grievance to the appropriate party and meeting with Principal.
c. Step 2 of the formal grievance process permits grievant (Plaintiff) to appeal any decision at Step 1 to, and meet with the Superintendent.
d. Step 3 of the formal grievance process permits the grievant (Plaintiff) to appeal any decision at Step 2 to, and meet with the Board of School Directors.
e. Step 4 of the formal grievance process permits the grievant (Plaintiff) to request that the association take the grievance to binding arbitration.

(ECF No. 16, at ¶ 59). The SAC also makes reference to a "Grievance Report Form" requiring

signatures and guidance regarding procedures, but it is unclear what the form required or what

entity, the School District or the Union, was required to complete the form according to the

CBA.

In *Meyers*, cited with approval by the court of appeals in *Dykes*, the court noted:

[t]he post-termination grievance process consist[ed] of three steps. At Step 1, the employee's supervisor reviews the employee's complaint and responds in writing. At Step 2, the grievance is presented to a higher university official. This official must discuss the grievance with the employee and the employee's representative, if any, and issue a written response. At Step 3, the assistant vice president for labor relations, or the vice president's designee, reviews the grievance and issues a written decision.

*Armstrong v. Meyers*, 964 F.2d 948, 949 (9th Cir. 1992). Thus, in *Meyers*, the grievance process

included a grievance response by the employer in writing, and also required a written response

and written decision by the employer, affording notice and opportunity to be heard.

*Dykes* determined that the plaintiff in that case failed to state a claim for post-deprivation

denial of due process where the plaintiff had a three-step grievance process that could be

followed by arbitration, even though the plaintiff alleged that his employer and union acted in

concert to deprive him of his due process rights in the grievance process and Dyke's union failed

to obtain and present meaningful evidence and discouraged him from presenting evidence on his

32

own behalf. 68 F.3d 1564. The grievance process was exhausted and, when the union determined not to carry the matter to arbitration, Dykes did not pursue a state court action alleging breach of the duty of fair representation. *Dykes*, 68 F.3d at 1571. Ultimately, *Dykes* did not reach the issue of whether the grievance procedures were inadequate, as the plaintiff did not raise that challenge and focused his challenge instead only on the process that actually occurred. 68 F.3d at 1570 ("Dykes does not claim that the procedures established are inadequate *per se* or that additional procedures are required."). In affirming the dismissal of the claim, the court observed that if a public employee has grievance procedures available to her and she believes the process was defective, she may seek relief in the form of an action against the Union alleging breach of the duty of fair representation. 68 F.3d at 1571. Notably, Michael did initially bring just such a claim against her Union, but subsequently dismissed the Union from this action, with prejudice.

For reasons which mystify the Court, neither party here has submitted a copy of the actual CBA laying out relevant procedures in their papers. *See Dykes*, 68 F.3d at 1566 n.3 (rejecting plaintiff's argument that the Court may not look at the CBA in reviewing the motion to dismiss, as the matter sued upon clearly grew out of an alleged violation of the CBA). But we can consider Michael's own allegations in the SAC relative to the CBA. Those allegations focus on what her Union did or did not do for her, rather than any flaw in the contractually-defined process itself. Indeed, in her brief in opposition to the Motion to Dismiss, Michael reiterates that her Union failed to advocate on her behalf in representing her in the grievance process, that her Union did not adequately enforce her rights "under the collective bargaining agreement" and "discouraged her from pursuing her claims," and that her Union provided no further notices and took no further actions in response to Defendants' final determinations. (ECF No. 40 at 12). As

33

noted above, Michael does lay out the multiple steps in the grievance process, and in the SAC, admits that it ends in binding arbitration. (ECF No. 16 at ¶ 59(e)). These assertions demonstrate that Michael is well aware of her contractual grievance rights (otherwise, she could not plausibly make them). Further, the Court notes that Michael does not allege any facts tending to show that the grievance procedure provided in the CBA is constitutionally inadequate such that Defendants' reliance on it to afford due process is misplaced.[11]

Michael further asserts in her SAC that although she participated in meetings to discuss incidents, the formal grievance structure was not identified to her, nor followed, but again the crux of her allegations in such regards relates to what her Union did or did not do. (ECF No. 16 at ¶¶ 60-65). In the face of an adequate grievance procedure, such a "bias" challenge will not state a claim for denial of post-deprivation procedural due process, *Dykes*, 68 F.3d at 1571 (citing *Jackson v. Temple University*, 721 F.2d 931 (3d Cir. 1983)), nor will a challenge that there was mishandling, or bias exhibited against her by her Union in the grievance process, because such a challenge must be brought only as a fair representation claim against the Union, *Ziccardi v. Commw.*, 456 A.2d 979, 981 (Pa. 1982), not as a claim against her employer for violation of due process. *Dykes*, 68 F.3d at 1571. Finally, we know that Pennsylvania law requires a public employer to provide to a union all relevant information regarding the subject of a grievance/arbitration proceeding. Thus, here, by positive state law, the District was obliged to provide any evidentiary information that Michael's Union would have needed to press her case, fulfilling the "notice" component of due process. *Pa. Dept. of Corrections v. PLRB*, 541 A.2d

---

[11] And as the Court notes below, she really can't do that. Further, the various allegations in the SAC regarding improper motive or bias in the grievance process on the part of the Union are divorced from any allegedly related improper conduct of Defendants, and the remedy regarding the Union's alleged failures must be sought, if at all, through a claim against the Union for breach of the duty of fair representation. *Dykes*, 68 F.3d at 1571; *see also Barnes v. Southeastern Pennsylvania Transp. Authority*, No. 93-3644, 1996 WL 92098, at * 6 (E.D. Pa. Feb. 28, 1996) (rejecting claim that grievance procedure was a sham were there was insufficient evidence to show concerted action by employer and union regarding grievance process).

1168, 1170-71 (Pa. Commw. 1988); *Commw. of Pa. v. PLRB*, 527 A.2d 1097, 1099-1100 (Pa. Commw. 1987).

Defendants' Motion to Dismiss Count II for violation of procedural due process will be denied as to the claim alleging violation of pre-deprivation due process because the Court finds that Michael has stated a claim for violation of pre-deprivation due process. It will be granted as to the claim alleging violation of post-deprivation due process because the Court concludes that the SAC does not and cannot state a claim for violation of post-deprivation procedural due process based on Michael's own admissions as to the grievance/arbitration process and the provisions of Pennsylvania labor law. Plaintiff acknowledges that she had a grievance and arbitration procedure available to her to challenge the District's dismissal of her and that it culminated in binding arbitration; boiled down, her only gripe is that her Union did not do enough, soon enough, to help her. If true, that may have made out a fair representation claim against her Union, but cannot support a due process claim against her public employer. Further, as is the case relative to the claim against Ondek and Mellet, Plaintiff has had plenty of opportunity to state her case as to an alleged denial of post-deprivation of due process, and as noted, what she has pled demonstrates that she is well aware of that process, what it provided, and how it worked. She had the burden of pleading and showing the inadequacy of the processes available to her, and has now had three chances to do that. The dismissal of such claim is with prejudice based on that reality, and in light of her own admissions as to that process in the SAC[12]. *Cureton*, 252 F.3d at 273-74 ("wait and see" approach to pleading disfavored); *see Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d. Cir. 2006) (a dismissal with prejudice appropriate where plaintiff has had repeated prior opportunities to amend and still fails to state a claim).

---

[12] Given Michael's admissions in the SAC regarding the content of the CBA grievance/arbitration process, and the requirements under state law for the provision of information to her Union in furtherance of that process, the Court also concludes that any such effort to amend would be fruitless, and therefore futile.

## IV. CONCLUSION

For the reasons stated, the Motion to Dismiss the Second Amended Complaint (ECF No. 22) filed by Defendants Quaker Valley School District, Barbara Mellett and Heidi Ondek will be granted in part and denied in part. The Motion to Dismiss Count I for First Amendment Retaliation as against Defendants Barbara Mellett and Heidi Ondek will be granted with prejudice. The Motion to Dismiss Count I as against Defendant Quaker Valley School District will be denied. The Motion to Dismiss any claim under Count II for violation of substantive due process will be dismissed as withdrawn. The Motion to Dismiss the claim under Count II for denial of pre-deprivation due process will be denied. The Motion to Dismiss the claim under Count II for denial of post-deprivation due process will be granted with prejudice.

An appropriate Order will follow.

Mark R. Hornak
United States District Judge

Dated: February 16, 2017

cc:     All counsel of record